**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**KATRINA M. BLEVINS**

       **Plaintiff,**

**vs.**                                      **Case No.  5:16cv310-WTH/CAS**

**NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,**

       **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for a period of disability and Disability Income Benefits (DIB) filed pursuant to Title II of the Act.  After consideration of the entire record, it is recommended that the decision of the Commissioner be reversed and remanded for further consideration.

## I. Procedural History

On December 8, 2014, Plaintiff, Katrina M. Blevins, filed an

application for DIB, alleging disability beginning November 20, 2014, based

on transforaminal lumbar interbody fusion at L5-S1; degenerative disk

disease of lumbar spine L1-2 and L3-4; moderate degenerative disk

disease at C5-6 and C6-7; mild sclerosis of the articular surfaces at L1-L2;

and anterior osteophytes throughout the lumbar spine and lower thoracic

spine.  Tr. 19, 156-63, 181, 185.[1]  Plaintiff meets the insured status

requirements for DIB through December 31, 2020.  Tr. 19; *but see*

Tr. 181, 228 (date last insured for DIB/Dec. 31, 2018).

Plaintiff's application was denied initially on January 27, 2015, and

upon reconsideration on March 18, 2015.  Tr. 19, 68-95, 100-05.  On April

21, 2015, Plaintiff requested a hearing, Tr. 19, 106-07, and the

Administrative Law Judge (ALJ) Andrew Dixon, III, presided over a video

hearing from Tallahassee, Florida, and Plaintiff appeared in Panama City,

Florida, represented by Brian A. Dusseault, an attorney.  Tr. 19, 36, 38, 96-

99.  Plaintiff testified during the hearing.  Tr. 41-60.  John B. Black, Ed.D.,

---

[1]  Citations to the transcript/administrative record, ECF No. 12, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

an impartial vocational expert, also testified.  Tr. 19, 60-65, 244-46 (Resume).

On July 13, 2016, the ALJ issued a decision and denied Plaintiff's application for benefits concluding that Plaintiff was not disabled from November 20, 2014, through the date of the decision.  Tr. 31.  On August 22, 2016, Plaintiff's current representative requested review of the ALJ's decision by the Appeals Council and filed a brief dated October 3, 2016. Tr. 4, 14-15, 247-48 (Brief-Exhibit 13E).  On November 1, 2016, the Appeals Council denied Plaintiff's request for review of the ALJ's decision making the ALJ's decision the final decision of the Commissioner.  Tr. 1-6; *see* 20 C.F.R. § 404.981.

On November 10, 2016, Plaintiff filed a Complaint with this Court seeking review of the ALJ's decision.  ECF No. 1.  The parties filed memoranda of law, ECF Nos. 18 and 19, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings:

1. "The claimant has not engaged in substantial gainful activity since November 20, 2014, the alleged onset date."  Tr. 21.

2. "The claimant has the following severe impairments: advanced lumbar facet arthropathy; lumbar stenosis; bilateral synovial cysts of the lumbar spine; status-post lumbar fusion; and degenerative disc disease of the cervical spine with spondylosis."  *Id.*  The ALJ determined that Plaintiff's impairments, which included depression,

anxiety, status-post fabuligation of the tonsils, status-post tonsillectomy, status-post tubal negation, allergic rhinitis, history of headaches, history of arthritis, and hypertension, were non-severe. Tr. 21-22. The ALJ also considered the four broad functional areas known as the "paragraph B" criteria and determined that Plaintiff had *no* restrictions in activities of daily living; *mild* difficulties in maintaining social functioning; *mild* difficulties in maintaining concentration, persistence, and/or pace; and *no* episodes of decompensation, of extended duration. Tr. 22-24

3.  "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 24. During the hearing, counsel did not identify a listing met by Plaintiff. Tr. 41.

4.  "[T]he claimant has the residual functional capacity [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a), except she can lift, carry, push, and/or pull 15 pounds occasionally and 10 pounds frequently; she cannot climb ladders, rope and/or scaffolds, but can frequently climb ramps and occasionally climb stairs; she can frequently balance; she can occasionally kneel, crouch, crawl, and/or stoop; she has manipulative limitations retaining the ability to occasionally reach overhead, frequently reach in other directions, as well as frequently handle, finger, and/or feel; she can tolerate up to frequent exposure to hazards such as heavy machinery and unprotected heights; she is able to sit 30 minutes before briefly standing to relieve any discomfort; she is able to stand 10 minutes before briefly having to sit and rest but cannot stand for more than 2 hours in an 8-hour workday; and she is able to walk 400 consecutive feet briefly before having to briefly stop but cannot walk more than 2 hours in an 8-hour workday." Tr. 24.

5.  "The claimant is unable to perform any past relevant work." Tr. 29.

6.  The Plaintiff was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset

date.  Tr. 30.  Plaintiff has at least a high school education and is able to communicate in English.  She acquired work skills from past relevant work.  *Id.*

7.  "Considering the claimant's age, education, work experience, and [RFC], the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy."  *Id.*  The vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations such as reception clerk, telemarketer, and information clerk all with a sedentary exertion, semi-skilled, with an SVP of 3 for the first two jobs and an SVP of 4 for the third job.[2]  Tr. 31; *see* Tr. 64-65.  The vocational expert agreed that if someone were unable to attend work on a sustainable basis, less than eight hours a day or 40 hours a week, it would affect employability -- "[t]ypically one-and one-half days, anything beyond that on a consistent basis for a month would be -- not be able to be tolerated."  Tr. 65.

8.  "The claimant has not been under a disability, as defined in the Social Security Act, from November 20, 2014, through the date of [the] decision."  Tr. 31.

---

[2]  "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties.  Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  20 C.F.R. § 404.1568(b).  An SVP of 3 means "[o]ver 1 month up to and including 3 months."  Dictionary of Occupational Titles (DOT) (4th Ed., Rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An SVP of 4 means "[o]ver 3 months up to and including 6 months."  *Id.*  In part, "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted). The court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. Moore, 405 F.3d at 1211.[3]

---

[3] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" <u>Bloodsworth</u>, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement). Both the "impairment" and the "inability" must be expected to last not less than 12 months. <u>Barnhart v. Walton</u>, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if she is under a disability prior to the expiration of her insured status. *See* 42 U.S.C.

§ 423(a)(1)(A); Moore v. Barnhart, 405 F.3d at 1211; Torres v. Sec'y of

Health & Human Servs., 845 F.2d 1136, 1137-38 (1st Cir. 1988); Cruz

Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R.

§ 404.1520(a)(4)(i)-(v).

1.  Is the individual currently engaged in substantial gainful activity?

2.  Does the individual have any severe impairments?

3.  Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4.  Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[4]

5.  Do the individual's impairments prevent other work?

---

[4]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  The responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 404.1546(c); *see* Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996, rescinded eff. Mar. 27, 2017) ("The term "*residual functional capacity assessment*" describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.").  The Court will apply the SSR in effect when the ALJ rendered his decision.  *See generally* Bagliere v. Colvin, No. 1:16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g). An ALJ may make this determination either by applying the grids or by obtaining the testimony of a vocational expert. Phillips, 357 F.3d at 1239-40; see 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. *See* 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.

## IV. Legal Analysis

### Substantial evidence does not support the ALJ's consideration of Dr. Kamal Elzawahy's opinion.

I.

Plaintiff argues that the ALJ failed to properly weigh the opinion evidence from one of her treating physicians, Dr. Elzawahry.  ECF No. 18 at 1, 5-12.  Dr. Elzawahry is a medical doctor employed with Brain and Spine Center (BSC) LLC, in Panama City, Florida.  Tr. 444-52.  Plaintiff was examined and treated by other medical doctors at BSC between March 2013 and June 2016 and ultimately examined by Dr. Elzawahry on May 21, 2016.  *Id.;* Tr. 27-28.  His patient notes and Medical Source Statement (MSS) are included in the record.  *Id.*  In essence, Dr. Elzawahry opined that Plaintiff has very limited functional abilities, Tr. 448-52, which was rejected by the ALJ, Tr. 28, and also disputed by the Commissioner, ECF No. 19 at 8-12.

II.

The ALJ begins his RFC assessment with a discussion of Plaintiff's pre- and post-hearing statements.

The claimant is a fifty-four year old female with a college education who is asserting disability due to a combination of allegedly debilitating impairments and associated symptomatology (Exhibits 2E; 4E; 6E; 8E; Hearing Testimony).  The claimant alleges that as a result of substantial limitations in her mobility, exertional, and non-exertional abilities caused by her severe medically determinable impairments, she is unable to return to any of her previous work, and/or any other job in the national and/or local economy.

The claimant alleges physical limitations that include complications of advanced lumbar facet arthropathy, lumbar stenosis, bilateral synovial cysts of the lumbar spine, status-post lumbar fusion, and degenerative disc disease of the cervical spine with spondylosis (Exhibits 2E; 4E; 6E; 8E; Hearing Testimony).

The claimant alleges mental limitations that include complications of depression and anxiety (Exhibits 2E; 4E; 6E; 8E; Hearing Testimony).

The claimant reported taking aspirin, aleve, hydrocodone, soma, lisinopril, lyrica, zoloft, and diclofenac for her medically determinable impairments as well as medication side effects consisting of tiredness, sleepiness, nausea, ear congestion, heartburn, insomnia, upset stomach, confusion, depressive ideations, vomiting, nausea, skins rash, dizziness, in-irritability, drowsiness, constipation, and fatigue (Exhibits 2E; 4E; 6E; Hearing Testimony).

The claimant reported to Social Security personnel that she experiences pain, discomfort, and fatigue secondary to multiple health conditions (Exhibits 2E; 4E; 6E; 8E).   The claimant also reported that she experiences psychological symptoms characterized by depressive ideations and anxiety (Exhibits 2E; 4E; 6E; 8E).   The claimant further reported that she has mobility, exertional, and non-exertional limitations secondary to her underlying conditions (Exhibits 2E; 4E; 6E; 8E).  Additionally, the claimant reported that her conditions are getting worse (Exhibits 2E; 4E; 6E; 8E).

During the hearing, the claimant testified that she has experienced head, neck, back, leg, and nerve pain subsequent to her underlying

conditions (Hearing Testimony).  The claimant also testified that she has trouble completing activities that she enjoyed previous to her lumbar fusion (Hearing Testimony).  The claimant further testified that she used to ride motorcycles and horses, but now generally just sits around the house (Hearing Testimony).  Additionally, the claimant testified that her ability to sustain work is limited by her underlying conditions (Hearing Testimony).

Notwithstanding the claimant's subjective complaints, the overall evidence of record received at the hearing level reflects that the claimant's symptoms are adequately controlled with treatment, over-the-counter, and prescribed medication, and she is able to function adequately in a full range of routine activities of daily living[5] with occasional and/or no assistance, which include: bathing herself, dressing herself, feeding herself, shaving herself, caring for her hair, dialing a telephone, using a computer, shopping in stores, shopping online, using the toilet, preparing simple meals, completing light household chores, doing laundry, sweeping the floor, mopping the floor, vacuuming, cleaning her bathroom, driving a car, riding in a car, going to doctor's appointments, picking up medicine, visiting family, associating with family, visiting friends, associating with friends, spending time with others on the phone, spending time with others on the computer, spending time with others in person, watching television, watching her grandchildren, going fishing, going swimming, going outside alone, and going outside daily (Exhibits 4E; Longitudinal Record; Hearing Testimony).

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the

---

[5]  The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.  Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).  *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).  The undersigned has considered the ALJ's in-depth analysis of Plaintiff's symptoms and daily activities, Tr. 25-26.

medical evidence and other evidence in the record for the reasons explained in this decision.

Tr. 25-26.

Next, the ALJ begins his discussion of the longitudinal record (medical records) with a July 11, 2002, MRI of Plaintiff's cervical spine, which revealed a disc herniation at C5-C6 with impingement on the left nerve root and a small posterior central herniation of the disc at C6-C7. Tr. 26; *see* Tr. 405. March 2006 x-ray scans of Plaintiff's lumbar spine revealed degenerative changes along the facet joints at L5-S1 and x-ray scans of the Plaintiff's thoracic spine revealed minimal thoracic spondylosis, while x-ray scans of the Plaintiff's cervical spine revealed evidence of chronic and rather marked disc deterioration at C5-C6 and C6-C7. *Id.* at 26-27; *see* Tr. 408.

Between April 2011 and September 2011, providers at Southern Bone and Joint Specialists, P.C., diagnosed Plaintiff with right lower back sciatica with low back pain, status-post fabuligation of the tonsils, and indicated she subjectively reported experiencing pain in her head, neck, back, and groin, as well as depressive ideations and heartburn. Tr. 27; *see* Tr. 261-66. MRI scans of the lumbar spine revealed evidence of mild degenerative disc disease with no significant stenosis and advanced facet arthropathy with a small left lateral synovial cyst. *Id*; *see* Tr. 257-58.

Clinical examinations revealed 5/5 motor strength in her lower extremities without neurological deficit, full range of motion of her hips, and intact sensation throughout with equal symmetrical reflexes. *Id.*

In May 2011, MRI scans of Plaintiff's lumbar spine revealed evidence of mild degenerative disc disease at L1-L2 and L3-L4 with no significant stenosis and advanced facet arthropathy with a small left lateral synovial cyst. *Id.*; Tr. 250-51.

In October 2011, Cyril C. DeSilva, M.S., M.D., a neurosurgeon, diagnosed Plaintiff with cervical, headaches, status-post tonsillectomy, status-post tubaligation, all by history, and indicated Plaintiff may be a good candidate for radiofrequency ablation therapy of the facet joints (at L5-S1) prior to consideration of surgery. "If that treatment is unsuccessful, then she would be a candidate for lumbar spine fusion and facetectomy at L5-S1." Tr. 27; *see* Tr. 273.

At this point, the ALJ begins a discussion of the medical records from Bay Medical Center, Bay Radiology Associates, Brain and Spine Center (BSC), and Spinal Associates and noted:

> Between October 2012 and June 2015, providers at Bay Medical Center, Bay Radiology Associates[,] Brain and Spine Center, and Spinal Associates diagnosed the claimant with right lower back sciatica with low back pain, status-post interbody fusion without residual compression of nerve roots and/or stenosis, status-post fabuligation of the tonsils, and indicated the claimant subjectively

reported experiencing pain in her head, neck, back, and groin, as well
as depressive ideations and heartburn (Exhibits 4F; 5F; 6F; 14F).
Providers noted that MRI-scans of the claimant's lumbar spine
revealed evidence of mild degenerative disc disease with no
significant stenosis and advanced facet arthropathy with a small left
lateral synovial cyst prior to surgery (Exhibits 4F; 5F; 6F; 14F).
Providers also noted that clinical examinations of the clamant prior to
surgery revealed 5 out of 5 motor strength in her lower extremities
without neurological deficit, full range of motion of her hips, and intact
sensation throughout with equal symmetric reflexes (Exhibits 4F; 5F;
6F; 14F).  Providers further noted that subsequent to surgery, x-rays
of the claimant's lumbar spine "looked good" with "good alignment of
graft and instrumentation" (Exhibits 4F; 5F; 6F; 14F).  Providers
ultimately recommended the claimant attend physical therapy after
reviewing her post-surgery x-rays (Exhibits 4F; 5F; 6F; 14F).

Tr. 27.

Dr. Elzawahry practices medicine at BSC in Panama City, Florida,

and examined Plaintiff once on May 21, 2016.  Tr. 444-47.  This is

Plaintiff's most recent visit with BSC, having been examined and treated by

several physicians at BSC from March 2013 through June 2016.  Tr. 27-28,

312-96, 411-38.  The ALJ referred to additional patient records at the BSC

as follows:

Between March 2013 and June 2016, providers at the Brain and
Spine Center diagnosed the claimant with degenerative disc disease
of the lumbar spine, lumbago, intractable low back pain, allergic
rhinitis by history, and indicated the claimant subjectively reported
experiencing back pain, bilateral leg pain, stiffness, and muscle
spasms (Exhibits 7F; 13F; 16F).  Providers noted that all diagnostic
nerve conduction tests administered on the claimant were with
normal limits and clinical examinations of the claimant revealed 5 out
of 5 motor strength in all muscles, normal muscle tone, and intact
sensation globally (Exhibits 7F; 13F; 16F).

****

Between July 2013 and September 2013, Merle P. Stringer, M.D., diagnosed the claimant with degenerative disc disease of the lumbar spine with bilateral synovial cyst, and spondylosis, lumbago, and indicated the claimant subjectively reported experiencing back pain, bilateral leg pain, stiffness, and muscle spasms (Exhibit 12F ).  Dr. Stringer noted that she advised the claimant not to proceed with surgery and indicated that there was nothing further from a neurological standpoint that good [sic] help her (Exhibit 12F).

Between April 2015 and May 2016, MRI scans of the claimant's lumbar spine revealed post- surgical changes at L5-S l with mild to moderate foraminal narrowing and minimal grade 1 retrolisthesis at L1-L2 (Exhibit 9F).

Tr. 27-28.

Dr. Elzawahry provided several pages of patient notes and noted in his MSS that the frequency and length of contact with Plaintiff dates back to 2012.  Tr. 448.  Dr. Elzawahry noted Plaintiff's past medical history, which included "s/p lumbar surgery with Dr. Reed on 11-24-14," Tr. 445, and April 15, 2015, post-surgery MRI of her lumbar spine.  Tr. 444; *see* Tr. 306-07, 400-01.  A review of systems indicated that Plaintiff had neck pain and stiffness, back, joint, and muscle pain, but no decreased range of motion and joint swelling.  Tr. 445.  Physical exam results indicated that Plaintiff was in no acute distress.  Tr. 446.  Regarding her motor status, her bulk, contour, and tone were normal; she had 5/5 normal muscle strength in her

left and right upper and lower extremities. *Id.* Her gait was antalgic. *Id.*

The musculoskeletal examination

> of the spine revealed tenderness over the region of the lumbar spine
> (with paravertebral muscle spasms. Axial loading reproduces the
> patient's symptoms. Rotation of the spine and stressing the facets,
> which reproduces the patient's symptoms). Extension of the spine
> reproduces symptoms. Positive straight leg raising. Movement of the
> spine is limited and multiple trigger points identified.

*Id.; see id.* (description of Plaintiff's head and neck). The assessment and

plan included cervical radiculopathy, chronic M54.12 and lumbar

radiculopathy, chronic M54.16. Tr. 447.

Dr. Elzawahry provided a MSS on the same date concluding, in part,

that Plaintiff is likely to be "off task" 25% or more during a typical workday;

"[i]ncapable of even 'low stress' work"; and likely to be absent from work

"[m]ore than four days per month," and, as a result, essentially unable to

work. Tr. 452; *see* Tr. 65-66 (vocational expert opining person's ability to

attend to work "less than say eight hours a day or 40 hours a week" or

missing more than 1½ days per month would affect employability).

The ALJ referred to Dr. Elzawahry's patient records and MSS (Exhibit

16F), sandwiched between references to BSC notes (March 2013 and June

2016) and Dr. Stringer's notes between July 2013 and September 2013,

and afforded Dr. Elzawahry's "findings only little weight" stating:

> Detailed above and below, the undersigned has accounted for

> Dr. Elzawahry's suggested limitations that are supported by the record in forming the claimant's residual functional capacity. The undersigned notes that Dr. Elzawahry did not have the benefit of reviewing all the evidence received at the hearing level prior to making the opinions. Therefore, the opinions are not reflective of the totality of evidence. Nonetheless, the undersigned has considered the opinions in the light most favorable to the claimant.

Tr. 28.

As noted herein and by the ALJ, Tr. 27-28, Plaintiff has been a patient at BSC since approximately 2013 and treated there by Karin S. Maddox, M.D., Tr. 312-91, 424-33, Merle P. Stringer, M.D., Tr. 412-15, Douglas L. Stringer, M.D., Tr. 416-21, and Dr. Elzawahry, Tr. 444-52. Dr. Elzawahry's name appears on the BSC letterhead as of an April 4, 2013, examination of Plaintiff conducted by Dr. Maddox. Tr. 388-89.

As the finder of fact, the ALJ is charged with the duty to evaluate all of the medical opinions of the record and resolve conflicts that might appear. 20 C.F.R. § 404.1527. When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a

whole; (4) whether the opinion is from a specialist and, if it is, it will be

accorded greater weight; and (5) other relevant but unspecified factors.

20 C.F.R. § 404.1527(b) & (c)(1)-(6).

The opinion of the claimant's treating physicians must be accorded

considerable weight by the Commissioner unless good cause is shown to

the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

This is so because treating physicians "are likely to be the medical

professionals most able to provide a detailed, longitudinal picture of your

medical impairment(s) and may bring a unique perspective to the medical

evidence that cannot be obtained from the objective medical findings alone

or from reports of individual examinations, such as consultatative

examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This

requires a relationship of both duration and frequency."  Doyal v. Barnhart,

331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating

physician must be supported by substantial evidence, Marbury v. Sullivan,

957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated.

Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is

given to a treating physician's opinion and any reason for giving it no

weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at 1053.

The ALJ may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory."  Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Further, opinions on some issues, such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues

reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996; rescinded eff. Mar. 27, 2017).  Although physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility of assessing the claimant's RFC.

Plaintiff asserts that the ALJ did not properly consider the opinion of Dr. Elzawahry who examined Plaintiff once on May 21, 2016, and completed an MSS on the same date.[6]  Tr. 444-452.  The ALJ did not expressly refer to Dr. Elzawahry's patient notes, but did refer to Dr. Elzawahry's "suggested limitations that are supported by the record informing the claimant's residual functional capacity."  Tr. 28.

From a review of the record, it is true that Dr. Elzawahry did not have the benefit of all the evidence received at the hearing level.  Most if not all

---

[6]  The video hearing before the ALJ was held on June 20, 2016, and the decision was rendered on July 13, 2016.  Tr. 19-31.

treating physicians would not have the benefit of this information at the time they complete their patient notes and render conclusions as to their patient's functional abilities.  Here, there is a wealth of information from several providers including records of an ongoing relationship between March 2013 and June 2016 and between Plaintiff and the treating physicians at BSC where Dr. Elzawahry practices.  Tr. 27-28.  There are also contemporaneous records which overlap from other medical providers referencing examination and treatment of Plaintiff for back and spine related issues.  *Id.* at 27-28.  Aside from assigning a conclusory statement regarding the weight he gave to Dr. Elzawahry's opinions, the ALJ did not provide a satisfactory explanation for rejecting Dr. Elzawahry's opinions regarding Plaintiff's functional abilities in light of Plaintiff's extended examination and treatment at BSC.[7]

As noted herein, an RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other

---

[7]  Toward the end of his RFC assessment, the ALJ stated: "Pursuant to Eleventh Circuit case law and regulations, the undersigned gives greater weight to the treating and examining physician's reports as summarized herein."  Tr. 29.  The ALJ ultimately concluded that "the overwhelming evidence supports [Plaintiff's] ability to perform a reduced range of sedentary work."  *Id.*

persons, and medical records. *Id.* The responsibility for determining claimant's RFC lies with the ALJ, not a treating physician, notwithstanding the weight accorded treating physicians medical opinions. 20 C.F.R. § 404.1546(c). Moreover, opinions from treating physicians regarding a claimant's RFC would not be entitled to any special weight or deference.[8] The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability. 20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996; rescinded eff. Mar. 27, 2017). In <u>Lewis v Callahan</u>, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition. Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings." 125 F.3d at 1440; *see supra* at n.4.

---

[8] The ALJ gave "some weight" to the state agency medical consultant's opinions, but found the claimant somewhat more limited based on the overall evidence received at the hearing level (Exhibit 4A). Tr. 29. Although not given the same controlling weight or deference as the opinion of treating physicians, the findings of a state agency medical consultant regarding the nature and severity of a claimant's impairments must be treated as expert opinion at the ALJ and Appeals Council levels of administrative review. *See* SSR 96-6p, 1996 SSR LEXIS 3, at *4 (July 2, 1996, rescinded and replaced by SSR 17-2p eff. Mar. 27, 2017).

Case 5:16-cv-00310-WTH-CAS   Document 20   Filed 07/07/17   Page 24 of 26

Page **24** of **26**

It is the task of the ALJ to examine the evidence and resolve conflicting reports. *See* Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996). Here, although Plaintiff contends the ALJ did not review the June 17, 2013, MRI of the cervical spine conducted at BSC and presumably an April 4, 2013, MRI of the lumbar spine, Tr. 278-81, *see* ECF No. 18 at 10, the ALJ reviewed the salient medical evidence of record, including the objective results from the relevant treating physicians. *See, e.g.*, Tr. 280-81 (Apr. 4, 2013, MRI of the lumbar spine conducted at BSC),[9] Tr. 27-28. The ALJ states he "accounted for Dr. Elzawahry's suggested limitations that are supported by the record in forming" Plaintiff's RFC, but the ALJ's RFC determination is unexplainably inconsistent with Dr. Elzawahry's MSS and the functional limitations stated therein, even when considering the ALJ's factual findings relating to Plaintiff's reports of limitations, Tr. 21-23, 25-26.[10]

"A diagnosis or a mere showing of 'a deviation from purely medical standards of filing perfection or bodily' is insufficient; instead, the claimant

---

[9]  The ALJ is not required to discuss all the evidence. Mitchell v. Comm'r of Soc. Sec., Admin., 771 F.3d 780, 782 (11th Cir. 2014).

[10]  It is fairly clear the ALJ considered Dr. Elzawahry's patient notes and MSS when he considered other patient records from the other treating physicians from BSC. The ALJ referred, in part, to Exhibit 16F, which includes Dr. Elzawahry's patient notes and MSS, and that he most likely considered him part of the BSC practice unit. Tr. 27-28.

must show the effect of the impairment on her ability to work." <u>Wind v.</u>

<u>Barnhart</u>, 133 F. App'x 684, 690 (11th Cir. 2005) (unpublished) (quoting

<u>McCruter v. Bowen</u>, 791 F.2d 1544, 1547 (11th Cir. 1986)).  Plaintiff has

arguably done so here.  At the very least, the ALJ should have contacted

Dr. Elzawahry or another treating physician at BSC regarding Plaintiff's

functional limitations as discussed in the MSS.  Or, the ALJ should have

referred Plaintiff for a consultative physical examination as the record does

not indicate one was performed.[11]

Substantial evidence does not support the ALJ's consideration of

Dr. Elzawahry's opinion in conjunction with the patient records compiled at

BSC and other providers.  Although somewhat a close question, legal error

has been shown.[12]

---

[11]  "Under the social security regulations, the ALJ may order additional consultative examinations if the medical evidence submitted by the claimant does not provide enough information about an impairment to determine whether the claimant is disabled." <u>Salazar v. Comm'r of Soc. Sec.</u>, 372 F. App'x 64, 67 (11th Cir. 2010) (unpublished) (citing 20 C.F.R. § 416.917).

[12]  Plaintiff offers a secondary argument that the ALJ erred in not properly evaluating Plaintiff's credibility about her subjective complaints.  ECF No. 18 at 12-15. In light of the resolution of the first issue, it is not necessary to consider this issue.  See <u>Roark v. Comm'r of Soc. Sec.</u>, No. 6:14-cv-84-Orl-37TBS, 2015 U.S. Dist. LEXIS 34996, at *14 (Jan. 29, 2015) (citations omitted), *adopted*, 2015 U.S. Dist. LEXIS 35004, at *2-3 (M.D Fla. Mar. 20, 2015).  No opinion is rendered whether Plaintiff is disabled or entitled to benefits.

## V. Conclusion

Considering the record as a whole, the findings of the ALJ are not based upon substantial evidence in the record and the ALJ incorrectly applied the law.  Accordingly, pursuant to the fourth sentence in 42 U.S.C § 405(g), it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **REVERSED** and this case **REMANDED** for further proceedings.

**IN CHAMBERS** at Tallahassee, Florida, on July 7, 2017.

s/ Charles A. Stampelos_____
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**